[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10112

_____

D.C. Docket No. 0:18-cr-60224-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES INNOCENT,

Defendant-Appellant.

_____

No. 18-15210

_____

D.C. Docket No. 1:18-cr-20319-KMW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELIJAH HASAN JONES,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(October 8, 2020)

Before WILLIAM PRYOR, Chief Judge, TJOFLAT and HULL, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

These appeals require us to decide whether to vacate the convictions of two defendants whose indictments were defective in the light of *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019), and if not, whether to vacate one defendant's sentence under the Armed Career Criminal Act. Juries convicted Elijah Jones and James Innocent of possessing firearms as felons. 18 U.S.C. § 922(g)(1). On direct appeal, each of them challenges his indictment as defective for failing to allege he knew he was a felon, as required by *Rehaif.* Because neither challenged his indictment before the district court, and neither can establish that he did not know he was a felon, we affirm both of their convictions. Jones additionally argues that he should not have been sentenced under the Armed Career Criminal Act. But he waived that challenge during his sentencing hearing, and the district court did not plainly err in any event.

## I. BACKGROUND

Innocent and Jones both committed the crime of possessing a firearm as a felon. The facts underlying their convictions are different, but their appeals share common issues. We describe each one in turn.

2

### A. *James Innocent*

On June 11, 2018, law enforcement officers arrived at James Innocent's apartment in Pompano Beach, Florida, to evict him. At the door, an officer noticed a bulge in Innocent's right front pocket. A frisk revealed the bulge to be a grocery bag containing about $2,300 in cash. Inside the apartment, officers noticed a firearm next to a mattress in the room where Innocent slept. They also noticed drugs in plain view. When they searched the apartment, officers found a smorgasbord of drugs: heroin, fentanyl, crack cocaine, methamphetamine, Xanax, MDMA, and marijuana, along with digital scales, body armor, and ammunition.

A grand jury indicted Innocent on counts of possessing drugs with intent to distribute them, 21 U.S.C. § 841(a)(1), possessing a firearm in furtherance of drug trafficking, 18 U.S.C. § 924(c)(1)(A)(i), and possessing a firearm as a convicted felon, *id.* § 922(g)(1). But the indictment did not allege that Innocent knew he was a felon when he possessed the firearm or cite the provision for that element, *id.* § 924(a)(2). And he did not challenge it on that basis before the district court.

Before trial, a forensic psychologist confirmed that Innocent was competent to be tried. Innocent's evaluation reflected a low intelligence quotient score. It also detailed that Innocent completed high school in special education classes, earned average grades, and was never held back in school. And it reported that Innocent "did not exert adequate effort on cognitive tasks" during the evaluation.

3

At trial, Innocent stipulated that he had been convicted of a felony offense before June 11, 2018. His four felony convictions, stemming from three separate prosecutions, were cocaine possession, Fla. Stat. § 893.13(1)(a)(1), § 775.082(3)(d); cocaine and marijuana possession, *id.* § 893.13(1)(a)(1)–(2), § 775.082(3)(d)–(e); and two convictions for possessing cocaine with intent to sell, *id.* § 893.13(1)(a)(1). A jury convicted Innocent of all the counts charged in the indictment, and the district court sentenced him to 360 months of imprisonment.

## *B. Elijah Jones*

On the evening of January 10, 2018, two police officers patrolling the Little Haiti neighborhood of Miami spotted Jones standing by a car's passenger-side window and speaking to the driver. One officer executed a U-turn in his marked vehicle to tell the driver he was displaying a parking permit incorrectly. As the officer turned his car around, he saw Jones look at the marked vehicle, pull a dark object from his waistband, and toss it inside the car before walking away. On arrival, the officers found a loaded gun on the car's passenger-side floorboard. After detaining Jones and warning him of his rights, *see Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966), an officer asked Jones if the firearm was his. Jones said it belonged to his girlfriend. The officer then asked if the firearm was in Jones's possession. Jones denied possessing the gun. Asked a second time, he admitted to possessing the gun. The officer confirmed Jones was a felon and arrested him.

4

A grand jury returned a single-count indictment charging Jones with possessing a firearm as a felon, 18 U.S.C. § 922(g)(1). Like Innocent's indictment, Jones's indictment did not allege Jones knew he was a felon or cite section 924(a)(2). Like Innocent, Jones did not challenge the indictment on that basis. Instead, he raises that challenge for the first time on appeal.

Although Jones's trial did not focus on whether he knew he was a felon, several moments bore on that issue. During its opening statement, the government explained that, "[a]s [Jones] saw [the two] police cars approach him, he dropped the gun into the passenger side of that vehicle. The defendant knew he was a convicted felon and knew he couldn't possess a firearm or even a single round of ammunition, but he had a loaded gun with 15 rounds of ammunition." The jury heard testimony that Jones told the officers on the scene that he was a felon. Jones also stipulated to being a felon. And during closing argument, the government noted that Jones's decision to quickly discard the gun when officers approached suggested that he knew he was not allowed to possess it. Last, the government sought permission to introduce evidence of Jones's previous Florida felon-in-possession conviction, but the judge denied the motion because the evidence would have been unnecessarily prejudicial based on the other evidence of Jones's felon status.

5

The jury convicted Jones, and the district court sentenced him to 180 months of imprisonment and four years of supervised release based on the 15-year mandatory minimum imposed by the Armed Career Criminal Act for defendants who have previously committed at least three violent felonies or serious drug crimes. 18 U.S.C. § 924(e). Jones had three such convictions: one for aggravated assault with a firearm, Fla. Stat. § 784.021; one for resisting an officer with violence, *id.* § 843.01; and one for selling drugs at a school, *id.* § 893.13(1)(c).

During his sentencing hearing, Jones conceded that all three convictions counted as qualifying offenses under the Act. His attorney explained that he "wanted to" object to the guideline calculation. Specifically, he said he "would have loved to file" an objection arguing that Jones did "not qualify as an armed career criminal." But after he "researched and researched and researched and researched," he couldn't find a ground to object to viewing "the aggravated assault [with] a firearm [conviction] from 2000" as a violent felony. "[T]he 11th Circuit," he explained, "has found that aggravated assault with a firearm, that's a crime of violence. So [he] couldn't object to that." He reaffirmed that he had "consulted with other people in [his] office" and couldn't identify "a good-faith basis to file any" objections. "And I think, unfortunately," he concluded, "it looks like the calculations are correct that [Jones] does qualify. . . . I don't like it. But I couldn't file a legal objection[.]"At the end of the hearing, when the judge asked if there

6

were any objections to the sentence he had imposed, Jones reiterated, "[F]or sentencing purposes, we don't have any objections to the sentencing."

## II. STANDARD OF REVIEW

We review for plain error issues raised for the first time on appeal. *United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019). We may reverse an error that was plain and that affects the defendant's substantial rights, provided it also seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1290 (11th Cir. 2003). An error is plain if it is "clear" or "obvious," *United States v. Olano*, 507 U.S. 725, 734 (1993)—that is, if "the explicit language of a statute or rule" or "precedent from the Supreme Court or this Court directly resolv[es]" the issue, *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015) (quoting *Lejarde-Rada*, 319 F.3d at 1291). We evaluate the entire record, including evidence the jury did not hear, when reviewing for plain error. *Reed*, 941 F.3d at 1021. The party challenging the error bears the burden of proving that he had a "reasonable probability of a different result" absent the error. *Dell v. United States*, 710 F.3d 1267, 1276 (11th Cir. 2013) (internal quotation marks omitted). If a party invited the error, we may not review it on appeal. *United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006).

7

## III. DISCUSSION

Innocent and Jones argue that we should vacate their convictions in the light of the decision of the Supreme Court in *Rehaif*. Because neither defendant raised this argument in the district court, we review for plain error. In addition, Jones challenges his career criminal sentence on the ground that one of the crimes the district court treated as a crime of violence, aggravated assault with a firearm, is not categorically a violent felony under the Armed Career Criminal Act. We address the arguments in turn, and we reject both.

### A. Rehaif *Does Not Entitle Innocent or Jones to Relief.*

Federal law prohibits anyone "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm. 18 U.S.C. § 922(g)(1). Anyone who "knowingly violates" that provision "shall be fined . . . , imprisoned . . . , or both." *Id.* § 924(a)(2). Until last year, we interpreted that language to mean that a defendant could be convicted if he knew he possessed a firearm. *See, e.g.*, *United States v. Jackson*, 120 F.3d 1226, 1229 (11th Cir. 1997). The Supreme Court clarified in *Rehaif v. United States* that a defendant must know both that he possesses a firearm and that he has been convicted of a crime punishable by imprisonment for more than a year to violate section 922(g)(1). 139 S. Ct. at 2194.

8

After *Rehaif*, many defendants on direct appeal challenged their indictments as defective because the indictments omitted the previously unnecessary knowledge-of-status element. Innocent and Jones are two such defendants. Neither defendant challenged his indictment before the district court, so we review for plain error. *Reed*, 941 F.3d at 1021.

As with other *Rehaif* errors, the missing element in Innocent's and Jones's indictments satisfies the first two elements of the plain-error test. The indictments were erroneous because they did not include an element of the crime charged, knowledge of felon status. *Rehaif*, 139 S. Ct. at 2194, 2200. The error was plain because it is evident at the time of appellate review. *Henderson v. United States*, 568 U.S. 266, 277 (2013); *Reed*, 941 F.3d at 1021. But Innocent and Jones fail to meet the third element of the plain-error test because the error did not affect their substantial rights. Neither can satisfy his burden of proving a reasonable probability that he would have obtained a different result but for the error, *Reed*, 941 F.3d at 1021, because circumstantial evidence establishes that each knew of his felon status.

We start with Innocent. He was convicted of four felonies on three occasions. Most people convicted of a felony know that they are felons. *See United States v. Miller*, 954 F.3d 551, 559 (2d Cir. 2020). And someone who has been convicted of felonies repeatedly is especially likely to know he is a felon. *See*

9

*Reed*, 941 F.3d at 1021. Had the issue been contested at trial, Innocent's four felony convictions would have provided the government powerful evidence that he knew he was a felon.

Innocent points to his low intelligence quotient score as suggesting that he did not know he was a felon. But the competence evaluation qualified the score by pointing out that Innocent "did not exert adequate effort" during the examination. And Innocent completed high school on time and with average grades. Nor does the evaluation or any other evidence in the record evidence that Innocent's intelligence was impaired to the extent that he could not understand that he was a felon. So Innocent's competence evaluation does not undermine our confidence in the outcome.

When the record says little or nothing about the effect of the error, "the burden is the decisive factor." *United States v. Rodriguez*, 398 F.3d 1291, 1300 (11th Cir. 2005). If the defendant preserved the error, the government bears the burden of showing that it was harmless. *Olano*, 507 U.S. at 734. But on plain-error review, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id.* When a defendant "has not presented any evidence that" the error affected the outcome, he "fails to meet his burden under the . . . plain error test." *United States v. Taylor*, 417 F.3d 1176, 1183 (11th Cir. 2005).

True, there is less evidence that Innocent knew he was a felon than there is for some defendants in his shoes. For example, we have previously held that serving more than a year in prison provides circumstantial evidence of knowledge of felon status. *Reed*, 941 F.3d at 1022; *United States v. Moore*, 954 F.3d 1322, 1337–38 (11th Cir. 2020). Innocent never served more than a year in prison for any of his convictions, although he twice received a sentence of 364 days. But we have never suggested that that helpful fact is essential. *See Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1004 n.11 (11th Cir. 2004); Bryan A. Garner, et al., *The Law of Judicial Precedent* § 6, at 82 (2016). And the point remains that Innocent, not the government, bears the burden of proof on plain error review, and he cannot satisfy it.

Innocent's appeal falls short of the kind of record on which we have granted the relief he seeks. We held that Oniel Russell showed that a *Rehaif* error affected his substantial rights when he actively litigated his prohibited status during his felon-in-possession trial and maintained on several occasions that he was allowed to possess a firearm. *United States v. Russell*, 957 F.3d 1249, 1253–54 (11th Cir. 2020). We decided that Russell had shown a reasonable probability that a jury could conclude he lacked the knowledge *Rehaif* requires. *Id.* But Innocent, unlike Russell, can point to no convincing reason to think he did not know of his prohibited status despite being convicted of four felonies.

11

Jones's argument has even less to commend it. Abundant evidence reflects Jones's knowledge that he had been convicted of a felony. Jones told an officer at the scene that he was a felon. *See Reed*, 941 F.3d at 1021–22. And he had previously been convicted of being a felon in possession of a firearm, which is strong evidence he knew he was a felon. *See, e.g.*, *United States v. Hicks*, 958 F.3d 399, 402 (5th Cir. 2020). Jones, as the government argued at trial, also behaved in a way that suggested he knew he was not allowed to possess a gun when he immediately dropped the gun into someone else's car and left the scene when he saw police approaching. *See United States v. Singer*, 963 F.3d 1144, 1159 (11th Cir. 2020); *United States v. Brandon*, 965 F.3d 427, 433 (5th Cir. 2020). Like Innocent, Jones also had been convicted of multiple felonies. *See Reed*, 941 F.3d at 1021. And Jones served many years in prison for his previous convictions. *See id.* at 1022; *Moore*, 954 F.3d at 1337–38. So Jones's *Rehaif* argument fails.

To avoid the evidence they knew they were felons, Innocent and Jones resist plain-error review in the first place. They argue that indictment defects are always jurisdictional, so they should receive *de novo* review. They alternatively argue that the indictments failed to charge a federal offense because they omitted an element or because they cited only section 922, which makes criminal firearm possession for felons, without also citing section 924, which supplies the penalty and element of mens rea. We have already rejected both of those arguments. *Moore*, 954 F.3d at

12

1332–37; *United States v. McClellan*, 958 F.3d 1110, 1117–18 (11th Cir. 2020) (following *Moore*).

Innocent and Jones also argue that our decision in *United States v. Lang*, 732 F.3d 1246, 1249 (11th Cir. 2013), compels us to vacate their convictions even if they cannot show prejudice from their defective indictments, but we disagree. *Lang* vacated a conviction based on a defective indictment without requiring a showing of prejudice because the indictment affirmatively alleged non-criminal conduct, *id.*, while their indictments merely omitted an element. In fact, far from requiring automatic reversal for all indictment defects, *Lang* prefaced its holding by acknowledging that some indictment defects *do* require a showing of prejudice. *Id.* (quoting *United States v. Pena*, 684 F.3d 1137, 1148 n.8 (11th Cir. 2012)). *Reed*, not *Lang*, controls. Innocent and Jones must prove prejudice for this error.

Jones additionally argues that the strictures of plain-error review should not apply because novelty excuses procedural default. *Rehaif* is novel, he says, because it overturned circuit precedent that foreclosed the argument during Jones's trial. But procedural default, a set of rules governing applications for the writ of habeas corpus, is different from plain-error review. And even if it was not, *Rehaif* was not "truly novel" in the sense necessary to excuse procedural default. *United States v. Bane*, 948 F.3d 1290, 1296–97 (11th Cir. 2020); *see McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1087 (11th Cir. 2017) (en banc).

13

### B. The District Court Correctly Sentenced Jones under the Armed Career Criminal Act.

Jones next challenges his career criminal sentence. *See* 18 U.S.C. § 924(e). The Armed Career Criminal Act imposes a mandatory minimum sentence of fifteen years of imprisonment for felons who possess firearms and have three previous convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another." *Id.* § 924(e)(1). The Act defines a "violent felony," as relevant for this appeal, as "any crime punishable by imprisonment for a term exceeding one year . . . that[] has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B). We decide whether a defendant's crime is a violent felony not by looking at the facts of the crime he committed, but instead by assessing the crime as a categorical matter. *United States v. Stitt*, 139 S. Ct. 399, 405 (2018). Under this "categorical approach," we ask whether the least culpable conduct encompassed by a criminal statute necessarily involves the use, attempted use, or threatened use of physical force against a person. *See Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013).

Jones argues that his 2000 Florida conviction for aggravated assault with a firearm—which involved threatening to kill a woman during an argument and then discharging his gun into the air three times—was not a violent felony. He maintains Florida courts permit aggravated assault convictions on evidence

14

proving only recklessness, and we have held that felonies with a mens rea of recklessness are not categorically violent felonies. *United States v. Palomino Garcia*, 606 F.3d 1317, 1334–36 (11th Cir. 2010).

Jones waived this argument before the district court. During Jones's sentencing hearing, his attorney explained that he "wanted to" object to the presentence investigation report's conclusion that the Act required a 15-year sentence, and he "researched and researched and researched and researched," "consulted with other people in [his] office," and still "couldn't file a legal objection." His counsel specifically conceded that we have held "that aggravated assault with a firearm, that's a crime of violence. So [he] couldn't object to that." And he conceded that "it looks like the calculations are correct that [Jones] does qualify" for a sentence under the Armed Career Criminal Act. The doctrine of invited error prevents us from considering the arguments Jones expressly disclaimed before the district court. *Love*, 449 F.3d at 1157.

Jones argues he did not invite the error because he did not stipulate to his sentence or act to cause the admission of inadmissible evidence, "but simply failed to object." But he did more than "simply fail[] to object" when his explanation of why he agreed with the presentence report filled three pages of the sentencing hearing transcript.

15

Even if invited error did not apply, and even if Jones is right that the district court erred, Jones at least failed to raise the error before the district court, so plain error review applies. *United States v. Campbell*, 473 F.3d 1345, 1347–48 (11th Cir. 2007); *United States v. Jones*, 899 F.2d 1097, 1102–03 (11th Cir. 1990), *overruled in part on other grounds*, *United States v. Morrill*, 984 F.2d 1136, 1137 (11th Cir. 1993) (en banc). The error is not plain. We have already held that Florida aggravated assault is a crime of violence under the Act. *Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1338 (11th Cir. 2013). Jones attempts to avoid that holding on the ground that it conflicts with two of our earlier decisions: *United States v. Palomino Garcia*, 606 F.3d 1317, and *United States v. Rosales-Bruno*, 676 F.3d 1017 (11th Cir. 2012). He also argues that three intervening Supreme Court decisions—*Moncrieffe v. Holder*, 569 U.S. 184; *Descamps v. United States*, 570 U.S. 254 (2013); and *Mathis v. United States*, 136 S. Ct. 2243 (2016)—have undermined it. We have rejected most of Jones's arguments already. *United States v. Golden*, 854 F.3d 1256, 1256–57 (11th Cir. 2017). And even if the arguments we have not already rejected were to convince us the district court erred, any error is by no means obvious. *See Olano*, 507 U.S. at 734. No "precedent from the Supreme Court or this Court," or "explicit language of a statute or rule," "directly resolv[ed]" the issue in Jones's favor. *Hesser*, 800 F.3d at 1325 (quoting *Lejarde-Rada*, 319 F.3d at 1291). The district court did not plainly err.

16

## IV. CONCLUSION

We **AFFIRM** Jones's and Innocent's convictions and **AFFIRM** Jones's sentence.